# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

GWICH'IN STEERING
COMMITTEE, *et al.*,

        Plaintiffs,

        v.

DAVID BERNHARDT*,* in his official
capacity as Secretary of the Interior,
*et al.*,

        Defendants,

    and

NORTH SLOPE BOROUGH, *et al.*,

        Intervenor-Defendants.

Case No. 3:20-cv-00204-SLG

---

NATIONAL AUDUBON SOCIETY, *et al.*,

        Plaintiffs,

        v.

DAVID BERNHARDT*, et al.*,

        Defendants,

    and

ALASKA OIL & GAS ASSOCIATION,
*et al.*,

        Intervenor-Defendants.

Case No. 3:20-cv-00205-SLG

NATIVE VILLAGE OF VENETIE
TRIBAL GOVERNMENT, *et al.*,

      Plaintiffs,

       v.

DAVID BERNHARDT*,* in his official
capacity as Secretary of the Interior,
*et al.*,

      Defendants,

   and

ALASKA OIL & GAS ASSOCIATION,
*et al.*,

      Intervenor-Defendants.

Case No. 3:20-cv-00223-SLG

## **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

These are three actions brought by Gwich'in Plaintiffs,[1] Audubon Plaintiffs,[2]

and Venetie Plaintiffs[3] challenging the Bureau of Land Management ("BLM")'s

---

[1] Case No. 3:20-cv-00204-SLG. Gwich'in Plaintiffs are the Gwich'in Steering Committee, Alaska Wilderness League, Alaska Wildlife Alliance, Canadian Parks & Wilderness Society-Yukon, Defenders of Wildlife, Environment America, Inc., Friends of Alaska National Wildlife Refuges, National Wildlife Federation, National Wildlife Refuge Association, Northern Alaska Environmental Center, Sierra Club, The Wilderness Society, and Wilderness Watch.

[2] Case No. 3:20-cv-00205-SLG. Audubon Plaintiffs are the National Audubon Society, Natural Resources Defense Council, Center for Biological Diversity, and Friends of the Earth.

[3] Case No. 3:20-cv-00223-SLG. Venetie Plaintiffs are the Native Village of Venetie Tribal Government, Arctic Village Council, and Venetie Village Council.

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 2 of 27

planned January 6, 2021 sale of leases on the Arctic National Wildlife Refuge ("Arctic Refuge"). At issue are Plaintiffs' motions for a preliminary injunction that would enjoin Federal Defendants[4] from issuing oil and gas leases or authorizing seismic exploration in the Arctic Refuge until the Court enters a final judgment on the merits of Plaintiffs' claims.[5] For the reasons set forth below, Plaintiffs' motions will be denied without prejudice and a preliminary injunction will not be entered at this time.

## BACKGROUND

The Arctic Refuge is located in the northeast corner of Alaska. It was originally designated as a protected wildlife area in 1960.[6] In 1980, the passage of ANILCA established the present-day Arctic Refuge, which combines the

---

[4] Federal Defendants are David L. Bernhardt (in his official capacity as Secretary of the Interior), United States Department of the Interior, United States Bureau of Land Management, and United States Fish & Wildlife Service. Intervenor Defendants include Alaska Oil and Gas Association Defendants, North Slope Defendants, and the State of Alaska. *See infra*, nn.44–46.

[5] In their claims, Plaintiffs allege that in preparing an Environmental Impact Statement and Record of Decision for the leasing program, Federal Defendants violated the Alaska National Interest Lands Conservation Act ("ANILCA"), §§ 303(2)(B), 304(a), Pub. L. No. 96-487, 94 Stat. 2371 (1980) and 16 U.S.C. §§ 3101–3233; Title II of the Tax Cuts and Jobs Act, Public Law 115-97, Section 20001 (Tax Act); the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370j, and implementing regulations; the National Wildlife Refuge System Administration Act, 16 U.S.C. §§ 668dd–668ee, and implementing regulations; the Wilderness Act, 16 U.S.C. §§ 1131–1136; the Endangered Species Act, 16 U.S.C. §§ 1531–1544, and implementing regulations; the National Historic Preservation Act, 54 U.S.C. §§ 300101–307108, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Docket 19 at 5, ¶ 6 (Case No. 3:20-cv-00204-SLG); Docket 1 at 4 ¶ 10 (Case No. 3:20-cv-00223-SLG).

[6] Pub. L. No. 96-487, 94 Stat. 2371 (1980), *codified in relevant part at* 16 U.S.C. § 3101 et seq.

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 3 of 27

original 8.9 million acre protected wildlife area with an additional 10 million acres of adjoining land. Approximately 1.5 million acres within the Arctic Refuge has been designated as the "Coastal Plain," an area sometimes referred to as the "Section 1002 Area" because of its designation in Section 1002 of ANILCA.[7]

The Coastal Plain stretches from the coast of the Beaufort Sea in the north to the foothills of the Brooks Range in the south, encompassing vast tundra, floodplains, lagoons, treeless plain, salt marshes, lake basins, and deltas.[8] The Coastal Plain is used by a variety of wildlife, including migratory birds, polar bears, muskox, moose, grizzly bears, and seals, among others. The Coastal Plain also provides "an important calving ground for the Porcupine caribou herd."[9] The Porcupine caribou herd is of central significance to the Gwich'in Nation; it provides subsistence resources and its cultural significance is reflected in Gwich'in songs, stories, and dances.[10] The calving grounds on the Coastal Plain are sacred to the Gwich'in Nation; the Gwich'in People refer to them as

---

[7] 16 U.S.C. § 3142(b)(1).

[8] AR95222 (Arctic National Wildlife Refuge Comprehensive Conservation Plan). "AR" refers to the Administrative Record, which was filed conventionally at Docket 26 (Case No. 3:20-cv-00204-SLG).

[9] AR95222 (Arctic National Wildlife Refuge Comprehensive Conservation Plan).

[10] Docket 47-7 at 6, ¶ 12 (Case No. 3:20-cv-00204-SLG) (Demientieff Decl.).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 4 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 4 of 27

Iizhik Gwats'an Gwandaii Goodlit: "The Sacred Place Where Life Begins."[11]  The

Coastal Plain is also home to the Native Village of Kaktovik, an Iñupiat

community that relies on the Porcupine caribou herd for subsistence

resources.[12]

In the debates leading up to the passage of ANILCA, Congress was

divided on whether the Coastal Plain should be opened to oil and gas

exploration.  As recounted in the Senate Committee report on the bill:

> The Committee was particularly concerned with the
> [Arctic Refuge]. In hearings and in markup, conflicting
> and uncertain information was presented to the
> committee about the extent of oil and gas resources on
> the Range and the effect development and production of
> those resources would have on the wildlife inhabiting the
> Range and the Range itself . . . . The Committee was
> determined that a decision as to the development of the
> Range be made only with adequate information and the
> full participation of the Congress.[13]

ANILCA expressly banned oil and gas production, development, and leasing

in the Arctic Refuge.[14]  However, ANILCA also directed the Secretary of the Interior

(the "Secretary") to provide a report to Congress that presented "an analysis of the

---

[11] Docket 47-7 at 8, ¶ 17 (Case No. 3:20-cv-00204-SLG) (Demientieff Decl.).

[12] Docket 62-3 at 3, 5, 8 ¶¶ 5, 10, 15 (Case No. 3:20-cv-00204-SLG) (Rexford Decl.).

[13] S. Rep. 96-413 at 241 (1979) (published at 1980 U.S.C.C.A.N. 5070, 1979 WL 10337).

[14] ANILCA § 1003; 16 U.S.C. § 3143.

Case No. 3:20-cv-00204-SLG,  *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No.
3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-
00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 5 of 27

impacts of oil and gas exploration" on the Coastal Plain.[15]  In order to ensure that Congress was properly advised, ANILCA set out a multi-step process to precede the report's submission to Congress.[16]

The Secretary submitted the required report to Congress on April 21, 1987, and recommended that Congress "enact legislation directing the Secretary to conduct an orderly oil and gas leasing program for the 1002 area at such pace and in such circumstances as he determines will avoid unnecessary adverse effect on the environment."[17]

Congress did not authorize any leasing programs within the Coastal Plain until December 2017, when President Trump signed the Tax Cuts and Jobs Act of 2017 ("Tax Act") into law.[18]  Section 20001 of the Tax Act contains provisions that amend ANILCA in several ways that relate to the Arctic Refuge.  First, Section 20001(b)(1) lifts the restriction on oil and gas development within the Coastal Plain. Second, Section 20001(b)(2)(B) amends ANILCA to add an additional purpose for the Arctic Refuge: "to provide for an oil and gas program on the Coastal Plain." Third, Section 20001(b)(2)(A) directs the Secretary of the Interior to "establish and

---

[15] ANILCA § 1002(a); 16 U.S.C. § 3142(a).

[16] ANILCA § 1002(c); 16 U.S.C. §§ 3142(c)–(e).

[17] AR95458; AR95462 (Coastal Plain Resource Assessment).

[18] Pub. L. No. 115-97, 131 Stat. 2054 (2017).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 6 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 6 of 27

administer a competitive oil and gas program for the leasing, development, production, and transportation of oil and gas in and from the Coastal Plain." Section 20001(c)(1) requires the Secretary to conduct at least two area-wide lease sales under this program of at least 400,000 acres each within ten years after the enactment of the Tax Act; the Secretary "shall offer" the first lease sale not later than December 22, 2021, and the second not later than December 22, 2024.[19] Section 20001(c)(3) provides that the Secretary "shall authorize up to 2,000 surface acres of Federal land on the Coastal Plain to be covered by production and support facilities (including airstrips and any area covered by gravel berms of piers for support of pipelines) during the term of the leases under the oil and gas program under this section." The Tax Act instructs the Secretary to administer this program "in a manner similar to the administration of lease sales under the Naval Petroleum Reserves Production Act of 1976."[20]

After the Tax Act was passed, BLM began a NEPA review process for an oil and gas leasing program on the Coastal Plain. In September 2019, BLM released an Environmental Impact Statement ("EIS") analyzing the environmental impacts

---

[19] Tax Act § 20001(c)(1)(B)(ii)(I), (II).

[20] Tax Act § 20001(b)(3). The regulations governing oil and gas leases under the National Petroleum Reserves Production Act, 42 U.S.C. 6501 *et seq.*, are set forth at 43 C.F.R. Part 3130.

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 7 of 27

of a leasing program on the Coastal Plain.[21]   The EIS evaluated three action alternatives and one no-action alternative.[22]   BLM identified the alternative that "offers the opportunity to lease the entire program area" and "the fewest acres with no surface occupancy (NSO) stipulations" as its preferred alternative.[23]   BLM did not analyze alternatives that allowed less than 2,000 acres of surface facilities, reasoning that doing so "would be inconsistent with [the Tax Act] as Congress explicitly established the protective facility acreage limit."[24]

The EIS asserts that "[i]ssuance of an oil and gas lease does not have any direct effects on the environment since it does not authorize drilling or any other ground disturbing activities."[25]   However, it does "grant the lessee certain rights to drill for and extract oil and gas . . . ."[26]   But because "BLM cannot ascertain the precise extent of the effects of granting those rights until it receives and reviews potential future site-specific proposals for exploration and development," its analysis of environmental effects is based on "a hypothetical development

_____

[21] AR90163–93729 (Final EIS).

[22] AR90181–82 (Final EIS).

[23] AR90181 (Final EIS).

[24] AR90238 (Final EIS).

[25] AR90187 (Final EIS).

[26] AR90187 (Final EIS).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 8 of 27

scenario" that BLM states it developed "in a good faith effort to identify" reasonably foreseeable environmental effects.[27]

In August 2020, Secretary Bernhardt published a Record of Decision ("ROD") establishing an Oil and Gas Leasing Program for the Coastal Plain.[28]  The ROD adopted the preferred alternative identified in the EIS, but with some modifications.   The ROD explains that it does not "adopt the Leasing EIS's interpretive assumptions concerning Section 20001(c)(3)" of the Tax Act.[29] Instead, the ROD interprets Section 20001(c)(3)'s 2,000-acre limitation on "production and support facilities" to apply only to support facilities that support production, as opposed to those that support exploration or transportation.[30]  The ROD provides future interpretive guidance, explaining that "certain . . . types of facilities that the BLM assumed were included within the 2,000 acre limit in the EIS . . . may or may not be 'production support facilities,' depending on particular circumstances at issue."[31]

_____

[27] AR90187 (Final EIS).

[28] AR205951–206038 (ROD).

[29] AR205967 (ROD).

[30] AR205968 (ROD).

[31] AR205969 (ROD).

Case No. 3:20-cv-00204-SLG,  *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 9 of 27

On November 17, 2020, BLM published a Call for Nominations and Comments for the Coastal Plain Alaska Oil and Gas Lease Sale in the Federal Register.[32] The call opened a 30-day period for nominations and comments regarding the lease sale concluding on December 17, 2020.[33] On December 7, 2020, BLM published a Notice of 2021 Coastal Plain Alaska Oil and Gas Lease Sale and Notice of Availability of the Detailed Statement of Sale.[34] The notice states that the lease sale will be held on January 6, 2021.[35] On December 18, 2020, after the close of the comment period, BLM issued an Amendment to the Detailed Statement of Sale.[36] The amendment withdrew ten tracts from the lease sale, totaling nearly 475,000 acres.[37] BLM explained that this decision was based on "multiple factors, specifically the environmental information developed as a part of the Environmental Impact Statement process, substantive comments received, industry interest based on the tract nominations from potential bidders, and the resource potential" in various tracts.[38]

---

[32] 85 Fed. Reg. 73292–93.

[33] 85 Fed. Reg. 73293.

[34] 85 Fed. Reg. 78865–66.

[35] 85 Fed. Reg. 78865–66.

[36] Docket 59-1 at 14–15 (Case No. 3:20-cv-00204-SLG) (Ex. A to Padgett Decl.).

[37] Docket 59-1 at 14 (Case No. 3:20-cv-00204-SLG) (Ex. A to Padgett Decl.).

[38] Docket 59-1 at 15 (Case No. 3:20-cv-00204-SLG) (Ex. A to Padgett Decl.).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 10 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 10 of 27

In September 2020, Kaktovik Iñupiat Corporation ("KIC") submitted a proposal for seismic exploration on the Coastal Plain for the winter season of 2020–2021, which is currently under consideration by BLM.[39] On December 16, 2020, BLM prepared an Environmental Assessment for the proposal and published a draft Finding of No New Significant Impact.[40] BLM issued a Notice of Availability for the Environmental Assessment and opened a public comment period beginning December 16, 2020, and ending December 30, 2020.[41]

On December 15, 2020, each set of Plaintiffs moved for a temporary restraining order and preliminary injunction; they seek an order prohibiting Federal Defendants "from issuing leases or authorizing seismic exploration in reliance on the Leasing Program final EIS and ROD" until the Court has rendered a final decision on the merits of Plaintiffs' claims.[42] Federal Defendants responded in

---

[39] Docket 59-1 at 3–4, ¶¶ 1, 2 (Case No. 3:20-cv-00204-SLG) (Padgett Decl.).

[40] Docket 47-34 (Case No. 3:20-cv-00204-SLG) (Marsh Creek East 3-D Seismic Survey Environmental Assessment); Docket 47-34 at 85 (Case No. 3:20-cv-00204-SLG) (Draft Finding of No New Significant Impact).

[41] 85 Fed. Reg. 81485–86.

[42] Docket 47-40 at 2 (Case No. 3:20-cv-00204-SLG) (Proposed Order); Docket 43-21 at 1–2 (Case No. 3:20-cv-00205-SLG) (Proposed Order) (requesting Defendants be "enjoined from awarding any leases, permitting any seismic exploration, or otherwise implementing or authorizing activities on federal lands within the Arctic National Wildlife Refuge pursuant to or in reliance on the August 2020 Coastal Plain Oil and Gas Leasing Program Record of Decision or the September 2019 Coastal Plain Oil and Gas Leasing Program Final Environmental Impact Statement"); Docket 36-27 at 1 (Case No. 3:20-cv-00223-SLG) (Proposed Order) (requesting Defendants be "enjoined from issuing any final oil and gas leases, authorizing any seismic exploration activities, or otherwise taking actions in reliance on and in furtherance of the

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 11 of 27

opposition,[43] along with Alaska Oil and Gas Association ("AOGA") Defendants,[44] North Slope Defendants,[45] and the State of Alaska.[46] Several states filed an amicus brief in support of Plaintiffs.[47] Oral argument was held on Audubon Plaintiffs' motion on January 4, 2021.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate."[48]

---

Coastal Plain Oil and Gas Program Final EIS, ANILCA § 810 Evaluation, and Record of Decision until after this Court has rendered a final decision and judgment in this matter").

[43] Docket 59 (Case No. 3:20-cv-00204-SLG), Docket 57 (Case No. 3:20-cv-00205-SLG), and Docket 49 (Case No. 3:20-cv-00223-SLG). Each set of Defendants filed consolidated and identical briefs in each action; the Court cites only to Defendants' briefs at the docket numbers at which they appear in Case No. 3:20-cv-00204-SLG.

[44] Docket 61 (Case No. 3:20-cv-00204-SLG), Docket 59 (Case No. 3:20-cv-00205-SLG), and Docket 51 (Case No. 3:20-cv-00223-SLG). AOGA Defendants are Alaska Oil and Gas Association and the American Petroleum Institute.

[45] Docket 62 (Case No. 3:20-cv-00204-SLG), Docket 60 (Case No. 3:20-cv-00205-SLG), and Docket 52 (Case No. 3:20-cv-00223-SLG). North Slope Defendants are North Slope Borough, Native Village of Kaktovik, and Kaktovik Iñupiat Corporation.

[46] Docket 63 (Case No. 3:20-cv-00204-SLG), Docket 61 (Case No. 3:20-cv-00205-SLG), and Docket 53 (Case No. 3:20-cv-00223-SLG).

[47] Docket 55-1 (Case No. 3:20-cv-00204-SLG), Docket 51-1 (Case No. 3:20-cv-00205-SLG), and Docket 45-1 (Case No. 3:20-cv-00223-SLG). The states are Washington, California, Connecticut, Delaware, Illinois, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Massachusetts.

[48] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 12 of 27

## LEGAL STANDARD

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[49] The Supreme Court in *Winter* characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[50] As such, the Court ruled that plaintiffs seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction."[51] Thus, a plaintiff "must demonstrate that in the absence of a preliminary injunction, 'the [plaintiff] is likely to suffer irreparable harm before a decision on the merits can be rendered.'"[52] "Speculative injury does not constitute irreparable injury . . . a plaintiff must demonstrate immediate threatened injury as a prerequisite to

---

[49] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

[50] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

[51] *Id.* at 22 (emphasis in original).

[52] *Winter*, 555 U.S. at 22 (quoting 11A Wright & Miller, *Federal Practice and Procedures* § 2948.1 (3d ed. rev. 2014)); *see also Blanco v. Burton*, Case No. Civ.A. 06-3813, 2006 WL 2366046, at *15 (E.D. La. Aug. 14, 2006) (sale of leases not enjoined where such action would not contribute to harms during pendency of action).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 13 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 13 of 27

preliminary injunctive relief."[53]   Moreover, "[t]here must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined," such as a "showing that 'the requested injunction would forestall' the irreparable harm . . . ."[54]  In the context of environmental statutes, procedural violations alone do not establish irreparable harm.[55]

Injunctive relief is an equitable remedy, and "'[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case.'"[56]

## DISCUSSION

Plaintiffs request an order enjoining Defendants from issuing leases on the Coastal Plain, approving seismic or other ground-disturbing activities on the

---

[53] *Caribbean Marine Serv. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis omitted) (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) and *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)).

[54] *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011)).

[55] *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 544–45 (1987); *see also Blanco v. Burton*, Case No. Civ.A. 06-3813, 2006 WL 2366046, at *15 (E.D. La. Aug. 14, 2006) (citing *Vill. of Gambell*, 480 U.S. at 544; *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982); and *United States v. Marine Shale Processors*, 81 F.3d 1329, 1349 (5th Cir. 1996) (explaining that "statutory violations do not, in and of themselves, constitute irreparable harm for purposes of injunctive relief on a preliminary basis")).

[56] *Sierra Forest Legacy*, 577 F.3d at 1022 (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

Case No. 3:20-cv-00204-SLG,  *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 14 of 27

Coastal Plain, or otherwise authorizing actions in the Arctic Refuge in reliance on the Final EIS and ROD.

## I.   BLM has not taken final agency action on the Kaktovik Iñupiat Corporation Proposal.

As a threshold issue, the Court considers Defendants' contention that the Court lacks jurisdiction to enjoin approval of KIC's seismic permit application. Defendants contend that because that application is still pending, there is no final agency action for the Court to review.[57]  Federal Defendants contend that issuance of a seismic permit "is in no way authorized by the ROD, which simply establishes the program and only authorizes lease sales."[58]  They maintain that any seismic exploration will require further review under NEPA and other laws[59] and add that the KIC proposal is unconnected to the lease sale insofar as it does not depend on a lease sale or the issuance of any leases.[60]

Plaintiffs respond that they are "not asking this Court to rule prematurely on the seismic permit because . . . [they] are challenging the legality of the program and asking the court to enjoin BLM from relying on *this* EIS and ROD to implement

---

[57] Docket 59 at 25–28; Docket 61 at 34–36; Docket 62 at 33–34; Docket 63-2 at 39–40.

[58] Docket 59 at 23.

[59] Docket 59 at 26.

[60] Docket 59 at 22–23 (citing Docket 59-1 at 5, ¶ 6 (Padgett Decl.)).

Case No. 3:20-cv-00204-SLG,  *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 15 of 27

the overall program, of which seismic is an integral part," and both the EIS and the ROD are final agency actions.[61]

The APA permits judicial review of "final agency action for which there is no other adequate remedy in a court."[62]  Agency action is final where the action "mark[s] the consummation of the agency's decisionmaking process . . . it must not be of a merely tentative or interlocutory nature" and "must be [an action] by which rights or obligations have been determined, or from which legal consequences will flow."[63]  Agency action may be final even where the agency does not characterize it as such when "it 'has the status of law or comparable legal force' or if 'immediate compliance with its terms is expected.'"[64]

The Court agrees with Defendants that BLM has not taken final agency action with respect to KIC's seismic survey proposal.  KIC submitted an application to BLM for seismic activities in September 2020, and the application is pending.[65]  At this stage, the agency has not taken an action on that application that marks the consummation of its decisionmaking or from which consequences, rights, or

---

[61] Docket 65 at 11 (emphasis in original).

[62] 5 U.S.C. § 704.

[63] *Bennett v. Spear*, 520 U.S. 154, 177 (1997) (internal citations and quotations omitted).

[64] *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014) (quoting *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006).

[65] Docket 59-1 at 4, ¶ 2 (Padgett Decl.).  Docket 59-1 at 4–5, ¶¶ 3–4.

Case No. 3:20-cv-00204-SLG,  *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 16 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 16 of 27

obligations flow. Accordingly, to the extent that Plaintiffs ask the Court to enjoin BLM's approval of the KIC proposal, the Court will deny Plaintiffs' motions. However, KIC's proposal clearly contemplates action in the near future, and if BLM does approve the proposal, Plaintiffs are not precluded from seeking injunctive relief at that time.[66]

## II.  Plaintiffs have not established a likelihood of irreparable injury in the absence of a preliminary injunction.

Plaintiffs contend that environmental injury is often permanent and irreparable by its very nature.[67]  They maintain that if BLM had engaged in the required analysis when it prepared the EIS and the ROD, it might have limited lease areas or adopted different restrictions.  Instead, BLM has proposed to issue leases covering the entire Coastal Plain, which could commit those areas to oil and gas for decades.[68]  Lessees will have the right to "undertake seismic operations, conduct exploratory drilling, build gravel mines, and construct" infrastructure that will result in lasting and permanent damage to the Coastal

---

[66] *See* 85 Fed. Reg. 79082, 79084 (Dec. 8, 2020) ("Seismic operations will commence as soon as February 1, 2021 . . . .").

[67] Docket 47-1 at 17 (Case No. 20-cv-00204-SLG) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987); Docket 43 at 14 (Case No. 3:20-cv-00205-SLG) (quoting *Vill. of Gambell*, 480 U.S. at 545); Docket 36-1 at 14 (Case No. 3:20-cv-00223-SLG) (quoting *All. Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[68] Docket 47-1 at 18–19 (Case No. 3:20-cv-00204-SLG).  During the nomination and comment period, BLM withdrew ten tracts totaling approximately 475,000 acres from the upcoming lease sale.  Docket 59-1 at 14 (Ex. A to Padgett Decl.).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 17 of 27

Plain.[69]  Plaintiffs contend that the lease sale will "constitute an irretrievable commitment of resources," and that once issued, BLM will lose its authority to prohibit oil and gas activities on the leases regardless of impact.[70]  Plaintiffs emphasize that the sample lease form grants lessees the right to develop rights-of-way and easements and add that BLM itself has repeatedly represented that it lacks the authority to preclude oil and gas activities on leased land.[71]  Plaintiffs further maintain that they "will be irreparably harmed by BLM's issuance of the leases because the agency will have issued the leases without conducting the required analysis and ensuring necessary protections are in place, while foreclosing its ability to deny oil and gas activities."[72]  Gwich'in Plaintiffs add that seismic exploration activities will cause long-term and permanent damage to the Coastal Plain and will harm Plaintiffs' use of the area as well as the Gwich'in

---

[69] Docket 47-1 at 19 (Case No. 3:20-cv-00204-SLG) (citing Docket 47-32 at 81) (Sample Coastal Plain Lease Form)).

[70] Docket 47-1 at 18 (Case No. 3:20-cv-00204-SLG); Docket 36-1 at 36 (Case No. 3:20-cv-00223-SLG).

[71] Docket 47-1 at 18 (Case No. 3:20-cv-00204-SLG) (citing Docket 47-32 at 81 and AR90199–2200, 91979, 205959 n. 4, 205975, 206003); Docket 43 at 15 (Case No. 3:20-cv-00205-SLG); Docket 36-1 at 36 (Case No. 3:20-cv-00223-SLG) (citing 36-22 at 6 (Detailed Statement of Sale)) (Section 20001(c)(3) of the Tax Act "functions as a directive to BLM that it must not deny or unreasonably limit development of production and support facilities on the Coastal Plain until 2,000 surface acres are covered by production and support facilities.").

[72] Docket 47-1 at 19 (Case No. 3:20-cv-00204-SLG).

Case No. 3:20-cv-00204-SLG,  *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 18 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 18 of 27

Nation's cultural and spiritual connection to the Coastal Plain.[73] Audubon Plaintiffs maintain that "overflights, aerial and ground-based seismic, and other human disturbance are more likely to occur in leased areas" and will "harm wildlife and destroy the natural setting and opportunities for solitude" that make the Arctic Refuge unique.[74] They add that harms arising from lease sales are not speculative just because ground-disturbing activities require later authorizations.[75] Plaintiffs also assert that allowing BLM to move forward with the lease sale without having conducted a proper NEPA analysis will cause "irreparable environmental harm by setting in motion a bureaucratic steamroller that is difficult to stop."[76]

---

[73] Docket 47-1 at 20 (Case No. 3:20-cv-00204-SLG).

[74] Docket 43 at 17 (Case No. 3:20-cv-00205-SLG) (citing 43-2 at 68 (Final EIS)).

[75] Docket 64 at 16–17 (Case No. 3:20-cv-00205-SLG) (citing *Sierra Club v. Marsh*, 872 F.2d 497, 500 (1st Cir. 1989) (vacating denial of preliminary injunction and remanding for consideration of whether allowing agency to proceed with construction of causeway might bias a later NEPA process so as to cause irreparable harm to the environment in light of a previous decision which enjoined a lease sale); *W. Watersheds Project v. Schneider*, 417 F. Supp. 3d 1319, 1335 (D. Idaho 2019) (enjoining implementation of federal land use plan that involved lease sales and rights-of-way grants where "the record shows that the [plan was] designed to open up more land to oil, gas, and mineral extraction as soon as possible" and such actions were likely to cause environmental harm); *S. Utah Wilderness All. v. Allred*, Civ. A. No. 08-2187(RMU), 2009 WL 765882, at *1 (D.D.C. Jan. 17, 2009) (enjoining BLM's sale of leases without clauses prohibiting surface occupancy because such a sale would "represent[] the point at which BLM makes an 'irreversible and irretrievable commitment[] of resources'" (quoting *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983)); and *Natural Resources Defense Council, Inc. v. Morton*, 377 F. Supp. 165, 166–67 (D.D.C. 1971) (enjoining sale of gas leases pending NEPA compliance in area that had been a source of spills and that could be "seriously harmed and contaminated by the possible oil pollution resulting from all too frequent oil spills")).

[76] Docket 43 at 14–16 (Case No. 3:20-cv-00205-SLG) (citing *Sierra Club v. Marsh*, 872 F.2d 497, 500–01 (1st Cir. 1989) and *Massachusetts v. Watt*, 716 F.2d 946, 952–53 (1st Cir. 1983);

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 19 of 27

Federal Defendants respond that "issuance of oil and gas leases under the ROD "cannot support a finding of imminent, irreparable injury."[77] They contend that because the issuance of a lease does not authorize any on-the-ground activity, it does not give rise to the environmental harms that Plaintiffs describe.[78] Federal Defendants maintain that Plaintiffs' focus on harms associated with seismic survey activities is erroneous, because BLM has not taken any final agency action to approve seismic activities.[79] Moreover, they contend that to the extent that BLM is unable to deny or regulate possible future developments, or if "there [is] such a thing as a bureaucratic steamroller," such an argument "fails to account for the fact that the Court is empowered to enter appropriate injunctive relief even after a lease is issued."[80] AOGA Defendants add that Plaintiffs fail to establish any imminent or non-speculative harm, emphasizing that BLM has withdrawn 10 of the 32 parcels for leasing since Plaintiffs filed their motion for injunctive relief.[81] AOGA Defendants dispute that the lease sale will give rise to bureaucratic momentum

---

Docket 36-1 at 37–38 (Case No. 3:20-cv-00223-SLG) (citing *Watt*, 716 F.2d at 947, 952).

[77] Docket 59 at 24.

[78] Docket 59 at 29.

[79] Docket 59 at 25–26.

[80] Docket 59 at 29.

[81] Docket 61 at 12.

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 20 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 20 of 27

that will cause Plaintiffs imminent and irreparable harm; they contend that the incoming administration has expressed opposition to the program, adding that the Ninth Circuit is skeptical that bureaucratic momentum can cause irreparable harm.[82] North Slope Defendants assert that they "would not support development if the evidence demonstrated that such activities would irreparably harm their homeland"; rather, they "seek to protect their historic lands while providing economic opportunities to sustain them into the future."[83] Lastly, the State of Alaska contends that neither the psychological nor procedural harms asserted by Plaintiffs constitute a showing of imminent irreparable harm.[84]

The Court finds that Plaintiffs have not established that they are likely to suffer imminent irreparable harm absent a preliminary injunction. The ROD does not authorize any immediate on-the-ground activities.[85] While Plaintiffs correctly

---

[82] Docket 61 at 27 (citing *N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1157 (9th Cir. 1988) and *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1082 (9th Cir. 2010) ("Bureaucratic rationalization and bureaucratic momentum are real dangers, to be anticipated and avoided by the Secretary . . . We assume the Secretary will comply with the law.").

[83] Docket 62 at 45.

[84] Docket 63-2 at 33–34 (citing *Grunewald v. Jarvis*, 776 F.3d 893, 906 (D.C. Cir. 2015) ("The National Park Service was not required to consider the psychological harm that some visitors may suffer from simply knowing that the intentional killing of deer happens at Rock Creek Park.").

[85] AR205970 (ROD) ("[T]he issuance of an oil and gas lease does not have any direct effects on the environment since it does not authorize drilling or any other ground disturbing activities; however, a lease does grant the lessee certain rights to drill for and extract oil and gas subject to reasonable regulation, including applicable laws, terms, conditions, and stipulations of the lease").

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 21 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 21 of 27

point out that the leases would grant the right to engage in certain ground-disturbing activities, they have not established a likelihood that those activities will occur before the Court issues a final ruling on the merits of Plaintiffs' claims. Under BLM's "optimistic, aggressive hypothetical scenario," exploration is projected to occur within two years after the first lease sale.[86] Moreover, BLM has acknowledged that "[f]uture on-the-ground actions requiring BLM approval, including potential exploration and development proposals, would require further NEPA analysis based on the site-specific proposal."[87] These facts lower the likelihood that any such activities would occur in the immediate future before the Court issues a ruling on the merits. Indeed, the only exploration activity being actively considered in the near future that Plaintiffs have identified is the KIC proposal, which, as discussed *supra*, is not properly before the Court at this time. Moreover, Plaintiffs have listed various threats to their enjoyment of the Arctic Refuge's solitude posed by, for example, aircraft noise and the presence of trucks, but they have not shown that these harms are likely to occur during the pendency of this action.

---

[86] AR90779–80 (Final EIS).

[87] AR90188 (Final EIS).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 22 of 27

In *Tribal Village of Akutan v. Hodel*, the Ninth Circuit stayed an injunction that enjoined an oil and gas lease sale pending the conclusion of the appeal.[88] Applying the "standard employed by district courts when considering a motion for a preliminary injunction," the Ninth Circuit determined that the plaintiffs would "suffer no hardship if the injunction is lifted, as none of the activities of the lease stage results in harm to the environment."[89] Likewise, Plaintiffs here have not shown that harm to the environment is likely to occur during the pendency of this action.

Plaintiffs cite to the Ninth Circuit's decision in *Conner v. Burford*. The *Conner* Court held that the sale of gas leases that did not prohibit surface occupancy without government approval constituted an "irreversible, irretrievable commitment of resources," and thus was a final agency action requiring an EIS.[90] But *Conner* concerned whether a specific agency action required an EIS; it does not mandate the finding that the issuance of such leases establishes an irreparable harm at the

---

[88] 859 F.2d 662 (9th Cir. 1988).

[89] *Id.* at 664 (emphasis added). *See also* 11A Wright & Miller, *Federal Practice and Procedures* § 2948.1 (3d ed. rev. 2014) ("Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief.").

[90] Docket 36-1 at 38; 848 F.2d 1441, 1448–51 (9th Cir. 1988).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 23 of 27

preliminary injunction stage, particularly when a court can, if warranted, order appropriate equitable relief at the merits stage.[91]

Plaintiffs also cite to *Southeast Alaska Conservation Council v. United States Forest Service*.[92] But that case is inapposite; there, the plaintiffs initiated the case on May 7, 2019, and both parties "stipulated that ground-disturbing activities associated with the sale could begin" as soon as September 27, 2019.[93] There is no such stipulation here; rather, ground-disturbing activities on the Coastal Plain will be subject to further NEPA review and formal approval by BLM, rendering them unlikely to occur in the immediate future during the time frame of a preliminary injunction.[94]

---

[91] Relief may include, in an appropriate case, the rescission of leases. *See Kettle Range Conservation Grp. v. U.S. Bureau of Land Mgmt.*, 150 F.3d 1083, 1087 (9th Cir. 1998) (rescission appropriate if leaseholders are joined). *C.f. S. Utah Wilderness All. v. Allred*, Civ. A. No. 08-2187(RMU), 2009 WL 765882 (D.D.C. Jan. 17, 2009) (citing *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983)). While an agency may lose its authority to prohibit or restrict certain actions upon issuing leases that do not contain clauses allowing them the agency to prohibit surface occupancy, a court retains equitable power. *See* Docket 59 at 37 (Case No. 3:20-cv-00204-SLG) (citing cases in which courts have ordered various equitable remedies for NEPA violations); *see also Mont. Wilderness Ass'n v. Fry*, 310 F. Supp. 2d 1127, 1153–57 (D. Mont. 2004) (enjoining surface-disturbing activities after finding NEPA violation in the sale of gas leases at summary judgment, pending evidentiary hearing to determine whether rescission of the leases was appropriate exercise of the court's "broad" equitable powers in that case); *see also League of Wilderness Defs./Blue Mts. Biodiversity Project v. Pena*, Case No. 3:12-cv-02271-HZ, 2015 WL 1567444 (D. Or. Apr. 6, 2015) (suspending rather than voiding timber contracts pending NEPA compliance).

[92] Docket 36-1 at 38 (Case No. 3:20-cv-00223-SLG) (citing 413 F. Supp. 3d 973 (D. Alaska 2019)).

[93] *Se. Alaska Conservation Council*, 413 F. Supp. 3d at 978 (D. Alaska 2019).

[94] AR90188 (Final EIS).

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 24 of 27

Nor does the risk of a "bureaucratic steamroller" establish a likelihood of irreparable injury here. Plaintiffs cite *Massachusetts v. Watt*, in which the First Circuit enjoined a lease sale before determining whether a supplemental EIS was required.[95] The First Circuit was concerned that "[o]nce large bureaucracies are committed to a course of action, it is difficult to change that course—even if new, or more thorough, NEPA statements are prepared and the agency is told to 'redecide.'"[96] But in a later decision, the First Circuit clarified that it "[i]n *Watt*, we simply held that the district court should take account of the potentially irreparable nature of this decisionmaking risk to the environment when considering a request for preliminary injunction."[97] In *Northern Cheyenne Tribe v. Hodel*, the Ninth Circuit recognized that "[b]ureaucratic rationalization and bureaucratic momentum are real dangers, to be anticipated and avoided by the Secretary," but nonetheless did not find them dispositive in deciding whether leases sold in violation of NEPA should be suspended or voided.[98] Plaintiffs assert that in *Hodel*, the Ninth Circuit did not have "an option to prevent [the] complicated choice [of whether to dissolve

---

[95] Docket 43 at 14–15 (Case No. 3:20-cv-00205-SLG) (citing 716 F.2d 946, 952–53 (1st Cir. 1983)).

[96] *Watt*, 716 F.2d at 952–53.

[97] *Sierra Club v. Marsh*, 872 F.2d 497, 501 (1st Cir. 1989) (issued following *Amoco v. Vill. of Gambell*, 480 U.S. 531 (1987)).

[98] 851 F.2d 1152, 1156–57 (9th Cir. 1988) ("We assume the Secretary will comply with the law.").

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 25 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 25 of 27

or suspend the leases] in the first place by enjoining a lease sale."[99]  However, that the Court may have to make a complicated decision at a later time does not establish irreparable harm on behalf of Plaintiffs.  While the Court recognizes that "[b]ureaucratic rationalization and bureaucratic momentum are real dangers," the Court concludes that such risk by itself does not establish a likelihood of irreparable harm in this case.[100]

The Court concludes that Plaintiffs have not established a likelihood of immediate and near-term irreparable harm absent a preliminary injunction before the Court renders a decision on the merits.  Because showing the likelihood of an irreparable injury is mandatory, the Court does not consider the remaining elements for a preliminary injunction.[101]  Thus, Plaintiffs' motions will be denied. Plaintiffs may be correct that, over time, they may be significantly injured as a result of the planned lease sales on the Coastal Plain.  But these future and cumulative

---

[99] Docket 64 at 19 (Case. No. 3:20-cv-00205-SLG).

[100] *See Blanco v. Burton*, Case No. Civ.A. 06-3813, 2006 WL 2366046, at *18–19 (E.D. La. Aug. 14, 2006) (discussing *Watt* and *Marsh* and denying a preliminary injunction based on low risk of harm to environment before merits would be resolved).

[101] *See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1378 (9th Cir. 1985) ("The district court's finding that plaintiff failed to show a significant threat of irreparable injury is not clearly erroneous.  Because such a showing is a prerequisite to a preliminary injunction, we need not decide whether plaintiff will eventually prevail in its claims."); *see also Wooten v. BNSF Ry. Co.*, Case No. CV 16-139-M-DLC-JLC, 2017 WL 1066630, at *3, (D. Mont. March 16, 2017) ("Because Wooten has not established the likelihood that he will suffer irreparable harm if a preliminary injunction or temporary restraining order is not issued, the court need not consider the three remaining *Winter* elements and his motion should be denied.").

Case No. 3:20-cv-00204-SLG,  *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 26 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 26 of 27

potential effects do not demonstrate the irreparable harm necessary for preliminary injunctive relief at this time. However, should BLM approve ground-disturbing activities at the Coastal Plain before the Court determines the merits of Plaintiffs' challenges, Plaintiffs may seek preliminary injunctive relief related to those activities.

## CONCLUSION

In light of the foregoing, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction at Docket 47 in Case No. 3:20-cv-00204, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction at Docket 43 in Case No. 3:20-cv-00205, and Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction at Docket 36 in Case No. 3:20-cv-00223 are each DENIED.

DATED this 5th day of January, 2021 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00204-SLG, *Gwich'in Steering Committee, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00205-SLG, *National Audubon Society, et al. v. Bernhardt, et al.*; Case No. 3:20-cv-00223-SLG, *Native Village of Venetie Tribal Government, et al. v. Bernhardt, et al.*
Order re Motions for Temporary Restraining Order and Preliminary Injunction
Page 27 of 27

Case 3:20-cv-00205-SLG   Document 69   Filed 01/05/21   Page 27 of 27